# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVSION

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action File No.<br>)  **CaseNumber**<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW Plaintiff, John Doe ("Doe"), files this Complaint against Defendant Cigna Health and Life Insurance Company ("Cigna"), showing the Court as follows:

## PRELIMINARY ALLEGATIONS

1.

This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an

employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff seeks relief, including but not limited to: health coverage under the Plan, approval and payment of benefits for healthcare expenses incurred due to denial of health coverage under the Plan, prejudgment and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION AND PARTIES

2.

The "Plan" is an employee welfare benefit plan as defined by ERISA, 29 U.S.C. § 1002(1).

3.

Jurisdiction is based on ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

4.

Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 29 U.S.C. § 1132(e)(2) because the breach of Cigna's duties alleged herein occurred in this district and Plaintiff lives in this district.

5.

Defendant Cigna is a Connecticut based insurance company that conducts

business in the State of Georgia.

6.

This Court has personal jurisdiction over Defendant.

7.

Defendant Cigna may be served through its registered agent for service, CT Corporation System, located at 289 S Culver St, Lawrenceville, GA, 30046-4805.

8.

John Doe is a "participant" in the Plan, as defined by ERISA, 29 U.S.C. § 1002(7) pursuant to which he and his dependent minor son C.W.[1] are entitled to health benefits.

9.

The Plan is a multiple employer welfare arrangement governed by ERISA and administered by Cigna.

10.

The Plan provides coverage for medically necessary healthcare services for

---

[1] Plaintiff's minor son is referenced by his initials pursuant to Federal Rules of Civil Procedure 5.2. Plaintiff proceeds with a pseudonym in litigation to further comply with Rule 5.2 in protecting his child's identity from disclosure in this public filing.

treatment of an illness.

11.

Cigna made all decisions concerning Plaintiff's claim for benefits under the Plan and handled all communications concerning Plaintiff's claim and appeal.

**FIRST CLAIM FOR RELIEF FOR DENIAL OF PLAN BENEFITS**

12.

Plaintiff requests Cigna approve and pay benefits for his son C.W.'s partial hospitalization treatment at CALO for dates of service August 27, 2022 to August 31, 2023.

**C.W.'s Mental Health History**

13.

In June 2022, C.W. was a 15-year-old with diagnoses of generalized anxiety disorder, oppositional defiance disorder, attention deficit hyperactivity disorder ("ADHD"), and Tourette Syndrome with vocal and motor tics and obsessive compulsive features.

14.

C.W. had a history of learning disabilities and behavioral problems resulting in detentions and suspension. He had a history of altercations and aggression including throwing objects, kicking, punching walls and people, and running away

from home. He had a history of homicidal and suicidal threats.

15.

C.W. had received mental health treatment at inpatient, residential, and partial hospitalization levels of care between September 2019 to June 2022. His condition worsened despite treatment.

16.

On June 23, 2022, C.W. was discharged from the residential treatment facility he had attended for three months due to C.W. assaulting staff at the facility.

**C.W.'s Admission to Partial Hospitalization at CALO**

17.

On June 30, 2022, C.W. admitted to partial hospitalization at CALO.

18.

His diagnoses on admission included generalized anxiety disorder, oppositional defiant disorder, persistent depressive disorder, Tourette Syndrome with vocal and motor tics and obsessive compulsive features, and attention deficit hyperactivity disorder.

19.

In treatment, he had intense outbursts of anger which included destruction of property, hitting, kicking, and threatening staff and peers.

20.

He had minimal coping skills to manage his feelings and relied on physical acts as a coping mechanism.

21.

He had poor emotional connections, difficulty understanding and showing empathy, and inability or refusal to repair relationships. He had poor decision making skills and poor perception of the world and did not have insight into his traumatic childhood.

22.

He became angry at authority figures, was unwilling to follow rules he deemed unfair, and did not accept the consequences for breaking rules.

23.

He had shame over what he did not accomplish in school or therapy and self-sabotaged any small successes in therapy, claiming that he was somehow faulty and unwanted and "he is going to screw it up anyway."

24.

He suffered consistent anxiety daily including feeling agitated, ruminating thoughts, and heightened awareness to external stimuli.

## Cigna's Approval of Benefits

25.

Cigna approved benefits for C.W.'s partial hospitalization at CALO from the date of his admission on June 30, 2022 through August 24, 2022.

**<u>Cigna's Denial of Benefits</u>**

26.

In a letter dated August 31, 2022, Cigna denied further benefits for C.W.'s partial hospitalization as of August 25, 2022 through discharge. Cigna claimed partial hospitalization was not medically necessary for C.W. based on MCG Behavioral Criteria Guidelines.

27.

Cigna wrote:

> [A]lthough you were demonstrating moderate impairments in functioning secondary to a mental health disorder, you are able to employ sufficient coping skills so that you can be safely and effectively treated at an available less restrictive level of care in the community without this intensity level of treatment. You do not have a clinical condition related to the admission diagnosis that is likely to deteriorate in the absence of the active treatment services provided at this level of care. You do not have active thoughts to harm yourself. You do have ongoing behavioral problems but you have not acted out physically or verbally towards anyone in the last couple weeks and are overall in better behavioral control. Your parents have been involved in your treatment and are a good support for you. You have been working on coping skills. Yom medications are stable. Less restrictive levels of care are available for your ongoing treatment.

28.

The denial was sent on Cigna letterhead and signed by Amanda Rizzari, MD, an employee of Evernorth Behavioral Health ("Evernorth"), a subsidiary of Cigna. Dr. Rizzari wrote that the denial was based upon her review.

**Plaintiff's First Appeal**

29.

On April 17, 2023, Plaintiff submitted his first appeal to Evernorth and provided an appeal letter, treatment records, and letter of support from CALO Medical Director Jyostsna Nair, MD and CALO Clinical Therapist, Patty Seahlaigh, MA, LPC.

30.

Plaintiff disputed the reasons for denial. Plaintiff wrote that C.W. had not yet developed the ability to employ coping skills, even in the contained environment of CALO. Plaintiff wrote that C.W.'s medications were not stable as he was tapering off Seroquel and additional changes to medications were made in March 2023.

31.

The treatment records show that at the time of the denial and onward, C.W. participated minimally in therapy and much of his discussion was superficial,

continued to struggle with aggression towards peers, and talked about committing suicide.

32.

The treatment records document that C.W. had many incidents of aggression with peers, therapist, parents, and teacher including showing that C.W. verbally threatened peers and staff, kicked and physically threatened staff, and destroyed property.

33.

The treatment records show that C.W.'s behaviors required multiple stays in the "Safety House" and multiple Emergency Safety Physical Interventions were placed to keep C.W. safe in treatment.

34.

In their March 9, 2023 letter of support, Dr. Nair and Ms. Seahlaigh explained C.W.'s behaviors and challenges in treatment and wrote that lower levels of care failed to alleviate C.W.'s symptoms and would be high-risk for him. Dr. Nair recommended that C.W. continue in residential treatment at CALO because his physical and verbal aggression behaviors "are deemed too dangerous for him to maintain his safety at home."

**Cigna's Approval of First Appeal Regarding Two Dates of Service**

35.

In a letter dated May 15, 2023, Cigna reversed its denial for two dates of service, August 25, 2022 to August 26, 2022, and approved benefits for C.W.'s partial hospitalization for those two dates. Cigna did not explain its decision.

36.

Cigna did not address the additional dates of service requested by Plaintiff.

37.

The May 15, 2023 letter was signed by James M., Appeals Processor.

**Cigna's Denial of First Appeal Regarding All Other Dates of Service**

38.

In a letter dated July 11, 2023, Cigna upheld the denial regarding dates of service August 27, 2022 to October 17, 2023.

39.

Cigna wrote:

> Although you did continue to have impairments in one or more essential daily functions, these impairments could be safely and effectively managed at an available less restrictive level of care. You were medically stable. You were not reported to be voicing thoughts of harm to self or others. There was no evidence of a modification of treatment approach that was significantly different from that which was provided before with little sustainable benefit. You had not developed new symptoms and/or behaviors that required this intensity level of treatment. Less restrictive levels of care were available for safe,

effective treatment.

40.

The denial was sent on Cigna letterhead and signed by Liebe Gelman, MD, a Medical Director of Cigna. Dr. Gelman wrote that the denial was based upon his review.

41.

The denial did not address, acknowledge, or refute the information submitted on appeal or the letter of support by Dr. Nail and Ms. Seahlaigh.

**Plaintiff's Second Appeal**

42.

On November 16, 2023, Plaintiff submitted a second level appeal and provided an appeal letter, treatment records, and an additional letter of support from Dr. Nair and Ms. Seahlaigh.

43.

Plaintiff disputed the reasons for denial stated in the first appeal denial letter. Plaintiff wrote that C.W. could not be treated at lower levels of care which had been tried unsuccessfully. Lower levels of care include intensive outpatient treatment and standard outpatient therapy which would entail C.W. residing at home. Dr. Nair opined that C.W.'s behaviors "are deemed too dangerous for him to maintain his

safety at home."

44.

Plaintiff wrote that C.W. "is an adolescent with deep trauma and mental illness. He has been verbally and physically aggressive and resisted many aspects of treatment along the way, until several months into his care at Calo. His deep trauma takes time, and it takes the contained milieu of a program such as Calo. Despite [his] history of failed treatments, he finally engaged in real work at Calo and slowly began to make real change."

45.

Plaintiff disputed Cigna's claim that C.W. was stable and was not voicing thoughts of harm to self or others. C.W. was placed in the CALO "Safety House" because he was deemed unsafe with others. C.W. was verbally and physically abusive towards staff and peers, as described in Dr. Nair's letter.

46.

These verbal and physical harming behaviors required C.W. to remain at CALO for the entirety of his treatment. For example, two weeks before his discharge, he was placed in the Safety House due to physical aggression towards a staff member.

47.

C.W. expressed verbally threats about his parents. For example, in a therapy session on November 3, 2022, C.W. made comments: "they can die," "they can kill themselves," and that they "needed to give him what he wanted or they would find out."

48.

In their September 14, 2023 letter of support, Dr. Nair and Ms. Seahlaigh wrote:

> C.W. has intrusive boundaries especially with authority figures, staff, and parents. He has verbalized his intention of harming staff including his therapist on several occasions. He has expressed his intention to harm his parents as well. He has voiced using physical harm to other staff that have "wronged" him. Often these verbal threats to the staff and peers will increase to physical altercations, in which the staff are required to use an emergency safety intervention until he is able to emotionally regulate on his own. He has had to reside in the safety team home for several weeks at a time for voicing and then attempting physical harm to peers and staff.
>
> * * *
>
> He has verbalized he has ruminating thoughts including thoughts of self-harm, heightened awareness to external stimuli, and overall feels agitated and anxious consistently daily. . . He expresses anger at his parents and has voiced that he will harm them.

### Cigna's Denial of Second Appeal

49.

In a letter dated January 10, 2024, Cigna upheld the denial regarding dates of service August 27, 2022 and "forward."

50.

Cigna wrote:

While you did continue to show moderate impairment in one or more essential daily functions, your impairments could be safely and effectively managed at an available less restrictive level of care as you were able to employ some of the healthy coping skills you had learned. At the time, you were medically stable, were not voicing thoughts of harm to self or others and were in better control of your behavior. While you continued to have behavioral problems, you had not acted out verbally or physically in a couple of weeks. Due to your improvement, your treatment team made only limited changes to your medication regimen and/or treatment plan. In addition, you had not developed new symptoms and/or behaviors that required this intensity level of treatment. Less restrictive levels of care were available for safe, effective treatment.

51.

The denial was sent on Cigna letterhead and signed by Michael Cohen, MD, a Medical Director of Cigna. Dr. Cohen wrote that the decision was made by an Appeals Committee.

52.

The denial did not address, acknowledge, or refute the information submitted

on appeal or the letter of support by Dr. Nail and Ms. Seahlaigh.

53.

Defendant wrongly denied benefits for partial hospitalization for C.W. in the following respects, among others:

(a) Failure to authorize and pay for health benefits as required by the Plan at a time when Defendant knew Plaintiff was entitled to such benefits under the terms of the Plan;

(b) Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of claims for health benefits;

(c) After claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect his request along with an explanation of why such material is or was necessary;

(d) Failure to properly investigate the merits of the appeal submissions; and

(e) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1 (h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment.

54.

Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied health benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

55.

Following the denial of the request for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

56.

Plaintiff seeks to recover benefits due to him under the terms of the Plan and to enforce his rights under the plan pursuant to 29 U.S.C. § 1132(a)(1)(3).

57.

As a proximate result of the denial of health benefits, Plaintiff has been damaged by the cost C.W.'s partial hospitalization, in the approximate amount of $215,000.00, the total sum to be proven at the time of trial.

58.

As a further direct and proximate result of this improper determination

regarding the health claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

59.

Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan and to clarify his rights to future benefits under the terms of the Plan.

## REQUEST FOR RELIEF

Plaintiff requests judgment against Defendant as follows:

1. Approval of health benefits for C.W.'s partial hospitalization;

2. Reimbursement to Plaintiff for costs of C.W.'s partial hospitalization denied by Cigna;

3. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

4. Payment of prejudgment and post judgment interest; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this 12th day of July, 2024.

**EVANS WARNCKE ROBINSON, LLC**

By: */s Steven J. Mitchell*
　　　Steven J. Mitchell

        Georgia Bar No. 669018

        Attorney for Plaintiff
6075 Barfield Road, Ste. 1200
Atlanta, GA 30328-4402
P:  404.841.9400
F:  678.904.6851
E:  s.mitchell@ewrlawfirm.com